UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-595 JGB (KKx)** | Date | January 7, 2022 |
|---|---|---|---|
| Title | *County of San Bernardino v. United Health Group Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) DENYING Mathis Bros. Oklahoma, LLC's Motion to Dismiss (Dkt. No. 14); (2) GRANTING IN PART and DENYING IN PART United Health Group Incorporated, et al.'s Motion to Dismiss (Dkt. No. 15); and (2) VACATING the January 10, 2022 Hearing (IN CHAMBERS)**

      Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Mathis Bros. Oklahoma, LLC. ("MTD 1," Dkt. No. 14.)  Also before the Court is a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) filed by Defendants United Health Group Incorporated, United Healthcare Services, Inc., United Healthcare Insurance Company, Optum Services, Inc., and United Medical Resources, Inc. ("MTD 2," Dkt. No. 15.)  The Court determines these matters are appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of and in opposition to the Motions, the Court GRANTS IN PART MTD 2 as to Claim II.  Plaintiff's Claim II is DISMISSED with LEAVE TO AMEND.  The January 10, 2022 hearing is VACATED.

## I. BACKGROUND

      On January 20, 2021, Plaintiff County of San Bernardino ("the County") filed a complaint in the Superior Court of California, County of San Bernardino, against Defendants United Health Group Incorporated, United Healthcare Services, Inc., United Healthcare Insurance Company, Optum Services, Inc., United Medical Resources, Inc., Las Vegas Sands

Corporation, and Mathis Bros. Oklahoma City, LLC (collectively, "Defendants"). ("Complaint," Dkt. No. 1, Ex. A.)

The Complaint alleges five causes of action: (1) promissory estoppel; (2) negligent misrepresentation; (3) breach of implied-in-law contract (emergency services); (4) breach of implied-in-fact contract (post-stabilization services); and (5) common count. (See Complaint.) Defendants removed to this Court on April 2, 2021. ("Notice of Removal," Dkt. No. 1.)

On May 21, 2021, Defendant Mathis Bros. Oklahoma City, LLC ("Defendant" or "Mathis") moved to dismiss Plaintiff's third, fourth, and fifth causes of action. ("MTD 1," Dkt. No. 14.) On the same day, Defendants United Health Group Inc., United Healthcare Services, Inc., United Healthcare Insurance Co., Optum Services, Inc. and United Medical Resources, Inc., (collectively, Third Party Administrator Defendants, or "United") joined in Mathis' MTD 1 and moved to dismiss Plaintiff's first and second causes of action. ("MTD 2," Dkt. No. 15.)[1]

Plaintiff opposed both motions to dismiss on September 27, 2021. ("MTD 1 Opp.," Dkt. No. 27; "MTD 2 Opp." Dkt. No. 28.) Defendants jointly replied on October 4, 2021. ("Reply," Dkt. No. 30.)

## II. FACTUAL ALLEGATIONS

The County alleges the following facts, which are assumed to be true for purposes of this Rule 12(b)(6) Motion. The lawsuit arises out of unpaid healthcare services rendered by the County hospital, Arrowhead Regional Medical Center ("Arrowhead") to a patient. (Compl. ¶ 1.)

In January 2018, a patient was attacked by her son after a family dispute. (Id. ¶ 29.) Her son doused her in gasoline and set her on fire. (Id.) The patient was rushed to a local hospital. (Id.) The hospital was not equipped to provide adequate treatment for the patient, who had severe burns to approximately 40% of her body and was in critical condition. (Id.) The patient was airlifted to Arrowhead Regional Medical Center ("Arrowhead").

The County operates Arrowhead. (Id. ¶¶ 2-3.) It is the only trauma center in the Inland Empire that is certified by the American College of Surgeons and is the only burn center in the region. (Id.)

The patient required extensive treatment, including pharmaceutical support, laboratory testing, burn unit care, intubation and ventilation, and respiratory and cardiac care. (Id. ¶¶ 18, 30.) The health care services involved emergency services which County was required to provide

---

[1] Defendant Las Vegas Sands settled with Plaintiffs on May 21, 2021. (Dkt. No. 13.)

by law, or were expressly or impliedly authorized by Defendants. (Id.) After spending a month in Arrowhead's ICU, the patient succumbed to her injuries. (Id. ¶ 29.)

Mathis is a self-funded health benefits plan. The patient was a beneficiary under the plan ("Mathis Plan" or "Plan"). When Arrowhead admitted the patient, the County called United, the Third Party Administrator and agent of Mathis, to verify coverage of the patient. (Id.) United informed the County that Mathis would authorize the patient's inpatient stay for a total of 30 days, with a follow up review date to authorize additional time as needed. (Id. ¶¶ 11, 30, 49.) When the County directly contracted Defendants, Defendants verified that the patient had insurance coverage, that all codes for the services to be provided were valid and covered by the Plan, and that no prior authorization was required. (Id. ¶¶ 43, 49.)

Defendants also represented that they would pay the County fair market value for the healthcare services provided to patient. (Id. ¶ 31.) During the patient's admission, the County was in frequent communication with United to provide information on the patient and services, and to continuously verify coverage. (Id. ¶ 23.) During and after Arrowhead provided medically necessary care to patient, County promptly submitted bills to Defendants, along with requested follow-up documents. (Id.)

The County billed Defendants $864,542.00 for medically necessary and complex services provided to the patient. (Id. ¶ 32.) Defendants initially refused to pay any amount. (Id.) Then Defendants paid $50,766.16. (Id.) After additional negotiations and appeals, Defendants paid an additional sum, which amounted to a total payment of $241,065.00. (Id.) The County continued to pursue proper payment but Defendants refused to make any further payment. (Id. ¶ 32.) County's action is based on Defendants' underpayment and seeks full payment for the services rendered to the patient, plus applicable interest. (Id. ¶¶ 27, 34.)

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### IV. DISCUSSION

The MTD 1 and MTD 2 make similar and overlapping arguments for dismissal. Accordingly, the Court will discern the motions jointly. Defendants move to dismiss all state-law claims in the operative complaint on the ground that such claims are preempted under the conflict preemption provision, ERISA section 514(a). Defendants argue that these claims depend on the existence and terms of ERISA plans because they are premised on allegations that Defendants represented during communications regarding verification of benefits with the County. The communication included confirmation that the Plan covered emergency services provided by the County and that Defendants would pay for the services in accordance with the Plan. In the alternative, Defendants argue that the County's state law claims are inadequately pled.

**A. Preemption**

ERISA section 514(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S. C. 1144(a). "While this section suggests that the phrase 'relate to' should be read broadly, the Supreme Court has recently admonished that the term is to be read practically, with an eye towards the action's actual relationship to the subject plan." Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56 (1995)). "Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA if 'it has a connection with or reference to such a plan.'" (Id.) (citation omitted.) "In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, an whether the existence of the plan is essential to the claim's survival. If so, a sufficient 'reference' exists to support preemption." (Id.) (citations omitted.) "In determining whether a claim has a 'connection with' an employee benefit plan, courts in this circuit use a

relationship test. Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant." (Id.) (citations omitted.)

The County's state law claims are based in tort or equitable concepts and do not necessarily depend on the existence or terms of an ERISA plan. The County's allegations raise the inference that Defendants confirmed that the services at issue were covered by the patients' policies and independently demonstrate that Defendants represented they would pay for such services at the Arrowhead. (Complaint ¶ X.) When construed in the County's favor, the allegations regarding Defendants' representations as to payment are independent of any statements Defendants allegedly made about insurance policies of the patients.

Given the procedural posture of the case, the Court finds that the County's state law claim depends neither on the existence nor terms of an ERISA plan. Therefore, the County's claims are not preempted under ERISA section 514(a). C.f. Wise v. Verizon Commc'ns, Inc., 600 F.3d 1180, 1190-91 (9th Cir. 2010) ("[W]here the existence of [an ERISA] plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted [under section 514(a)]") (citation and quotation marks omitted).

Because the MTD 1 asserts ERISA preemption as the basis for dismissal, that motion is DENIED in its entirety. The Court now turns to the question of whether such claims are adequately pled.

**B. State Law Claims**

    **1. Promissory Estoppel**

Promissory estoppel "is based on the equitable doctrine that a promisor is bound when he should reasonably expect a substantial change of position (act or forbearance) in reliance on his promise if injustice can be avoided only by the enforcement of the promise." Div. of Labor Law, 69 Cal. App. 3d at 275-76 (citations omitted). A claim for promissory estoppel "has three basic elements: (1) promise; (2) reliance; and (3) injury." Id. (citations omitted.)

The County asserts a claim against United for promissory estoppel, predicated on allegations that United's representations that it would pay the fair and reasonable rate for the services provided to each patient. (Complaint ¶ 44.) The County further alleges that it relied on United's representations in the services provided to patients. (Id.) The County alleges that United should be estopped from "refusal to pay the County the reasonable value of the healthcare services [Arrowhead] provided to Defendant's members." (Id. ¶ 46.)

United moves to dismiss on the ground that the County has not alleged a promise. United argues that this claim is predicated on Defendants' alleged representation that the services in question were covered under the patients' plans. Defendants rely on Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc., 12 Cal. App. 5th 200, 215 n. 16 (2017),

United contends that a representation about whether medical services are covered under an insurance plan does not constitute a promise.

United's arguments fail for the same reasons discussed above in connection with the County's claims for breach of contract. The County's allegations raise the inference that, apart from United's confirmation that the Plan covered the services at issue, United represented Defendants would pay for such services at Arrowhead. (Compl. ¶¶ 43-47.) These allegations are sufficient at this pleading stage to infer that Defendants promised to pay for the services in question at Arrowhead once the County provided them to the patients. In light of these allegations, Pac. Bay Recovery is inapposite. See 12 Cal. App. 5th at 215 n. 16 (failed promissory estoppel claim based on an insurer's failure to pay for medical services because the complaint did not include allegations which suggested that the insurer promised to pay).

The Court DENIES Defendants' motion to dismiss as to the County's claim for promissory estoppel.

### 2. Negligent Misrepresentation

To state a claim for negligent misrepresentation, plaintiffs must allege: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" Wells Fargo Bank, N.A. v. FSA, Fin. Sols., Inc., 196 Cal. App. 4th 1559, 1573 (Cal. Ct. App. 2011) (quoting Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Cambridge Integrated Servs/ Grp., Inc., 171 Cal. App. 4th 35, 50 (Cal. Ct. App. 2009)).

Plaintiff alleges that Defendants "intended that the County would rely on United's promise to pay a reasonable value for [Arrowhead's] services" and the County relied on the representation. (Compl. ¶ 50.) United argues that Plaintiffs fail to allege that they misrepresented a past or existing material fact as required to state a claim for negligent misrepresentation under California law.

Plaintiffs fail to plead the first element of a negligent misrepresentation claim: "the misrepresentation of a past or existing material fact." Wells Fargo Bank, 196 Cal. App. 4th at 1573. "Although a false promise to perform in the future can support an intentional misrepresentation claim, it does not support a claim for negligent misrepresentation." Stockton Mortg., Inc., v. Tope, 233 Cal.App.4th 437, 450 (Cal. Ct. App. 2014) (citing Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.App.4th 153-158-59 (Cal. Ct. App. 1991)). In Tarmann, a promise to "pay for [the insured's] repairs immediately upon completion" was a promise of future performance, not actionable under a negligent misrepresentation claim. Tarmann, 2 Cal. App. 4th at 158. Similarly, in Stockton Mortgage, a promise to "obtain a release of the notice of abatement action prior to the close of escrow…was a promise of future performance, and thus [could not] be the basis for a negligent misrepresentation cause of action." Stockton Mortg., 233 Cal. App. 4th at 458.

The County alleges that the falsity in the above representation lies in the fact that Defendants intended the County to rely on its promise to pay. The County does not allege how the representations regarding patient's eligibility and the County's authorization are false. Thus the pleadings indicate merely a false promise to pay the County for treatment rendered to patient in the future.

Although the County's Complaint does contain allegations that the County confirmed authorization with Defendants during and after healthcare services were provided, the allegations are not plead with particularity. To plead with particularity, Plaintiff must include "the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks omitted) (citing Cooper v. Picket, 137 F.3d 616, 627 (9th Cir. 1997)).

The Complaint vaguely alleges that Defendants confirmed it would pay before and after Arrowhead provided services to the patient. (Id. ¶ 23.) The Complaint does not allege with particularity when and where Defendants allegedly made the representations, which of Defendants' agents made the alleged representations, to whom the representations were made, and how the representations regarding the patient's eligibility and the County's authorization are false. Cf. Houston v. Medtronic, Inc., 957 F. Supp. 2d 1166, 1180 (C.D. Cal. 2013); Schreiber v. Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("[T]he pleader must state the time, place, and specific content of the false representation as well as the identities of the parties to the misrepresentation."). Thus, the County's negligent misrepresentation cause of action fails for this additional reason.

The Court GRANTS the MTD 2 as to this claim DISMISSES the County's negligent misrepresentation claim WITH LEAVE TO AMEND.

### 3. Implied-in-Law Contract (Quantum Meruit)

Plaintiff's implied-in-law contract claim (quantum meruit) is based on the theory that Defendants authorized the services rendered to the patient and impliedly agreed that it would reimburse Plaintiff for the provided health care services. (MTD 1 Opp. at 15.)

The California Court of Appeals has described the law of quantum meruit:

> Quantum meruit refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered. To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefore was to be made. The burden is on the person making the quantum meruit claim to show

>the value of his or her ser vices and that they were rendered at the
>request of the person to be charged.

Strong v. Beydoun, 166 Cal. App. 4th 1398, 1404 (Cal. App. 2008) (citations and quotations omitted).

The parties do not dispute that the County provided emergency services to the patient. Plaintiff is entitled to assert a quantum meruit claim only if the services at issue were "emergency services." See, e.g., YDM Mgmt. Co. v. Sharp Cmty. Med. Grp., Inc., 16 Cal. App. 5th 613, 628 (2017) (affirming summary judgment on quantum meruit claim due to inadequate evidence demonstrating services rendered were "emergency services"); Bell v. Blue Cross of California, 131 Cal. App. 4th 211, 218 (2005) ("Dr. Bell has standing…to pursue his common law claim of quantum meruit for a fair and reasonable reimbursement based on the implied-in-law contract created by Dr. Bell's statutory duty to provide [emergency] medical care.")

Defendants' arguments are not persuasive. At this stage of the proceedings, the County has adequately alleged an implied-in-law/quantum meruit claim. Additionally, Defendants have not contested whether any of the services provided were non-emergent.

The Court DENIES Defendants' motion to dismiss the County's Implied-in-Law Contract/Quantum Meruit claim.

**4. Implied-in-Fact Contract**

Quantum meruit is distinct from a contract implied-in-fact. Namdy Consulting, Inc. v. UnitedHealthcare Insurance Co., 2018 WL 6507890, at *4 (C.D. Cal. Dec 7, 2018) (citing Design Data Corp. v. Unigate Enterprise, Inc., 2013 WL 360542, at *6 (N.D. Cal. Jan. 29, 2013)). "[Q]uantum meruit is a theory which implies a promise to pay for services as a matter of law for reasons of justice, while implied-in-fact contracts are predicated on actual agreements, albeit not ones expressed in words…" Maglica v. Maglica, 66 Cal. App. 4th 442, 456 n. 14 (Cal. Ct. App. 1998).

In YDM Management Co., Inc. v. Aetna Life Insurance Co., 2016 WL 3751943, at *4 (C.D. Cal. Jul. 13, 2016), the court dismissed plaintiff's claim for breach of implied contract because the plaintiff did not allege an agreement by defendant to pay the customary, usual and reasonable amount for the medical services at issue.

Plaintiff sufficiently alleges that the parties reached an actual agreement that Defendants would pay the usual, customary and reasonable rate. (MTD 1 Opp. at 18-19.) Thus, Plaintiff establishes that Defendants breached the implied-in-fact contract, and Defendants' arguments do not persuade the Court otherwise at this stage.

The Court DENIES Defendants' Motion to Dismiss Plaintiff's Implied-in-Fact Contract claim.

### 5. Common Count

In California, a common count claim for services rendered requires a plaintiff to show (1) that the defendant requested the plaintiff perform services for the defendant's benefit; (2) that plaintiff performed the services as requested; (3) that defendant has not paid for the services; and (4) the reasonable value of the services provided. <u>YDM Management Co.</u>, at *4.

Mathis argues that Plaintiff's common count claim should be dismissed because they are preempted by ERISA and does not suggest an alternative method to dispose of the claim. (MTD 1 at 20.) Given that the Court has declined to find ERISA preemption at this stage, Mathis's sole argument on this claim is moot.

Thus, the Court DENIES Defendants' Motion to Dismiss Plaintiff's Common Count claim.

## V. CONCLUSION

For the reasons above, the Court DENIES the MTD 1. The Court GRANTS the MTD 2 as to Plaintiff's negligent misrepresentation cause of action. The Court DISMISSES Plaintiff's negligent misrepresentation cause of action WITH LEAVE TO AMEND. Plaintiff must file an amended complaint, if any, by January 11, 2022. The January 10, 2022 hearing is VACATED.

**IT IS SO ORDERED.**